Eastern District of Kentucky
**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

**MAY 1 1 2005**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**NOT FOR PUBLICATION OR CITATION**

CIVIL ACTION NO. 05-CV-50-KSF

JOHN H. SPRINGER                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

JOE BOOKER, ET AL.                                  DEFENDANTS


The plaintiff, John H. Springer, who lists his current address as 2504 Elliot Avenue,

Louisville, Kentucky, 40211, has filed a complaint under: (1) 28 U.S.C. §1331, pursuant to the

doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and

(2) Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2672 *et seq.* The plaintiff has filed a motion to

proceed *in forma pauperis*, and other documentation, which will be addressed by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential

elements. He must show, first, that he has been deprived of rights secured by the Constitution or

laws of the United States and, second, that the defendants allegedly depriving him of those rights

acted under color of *federal* law. *Bivens*, 403 U.S. at 397.

This is a *pro se* proceeding and, as such, it is held to less stringent standards than those

drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).

The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff.

*See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords

a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

CLAIMS

The plaintiff has submitted a thirteen-page typewritten complaint, to which he has attached numerous exhibits [Record No. 2].[1]  It appears that the plaintiff asserts numerous constitutional claims which he states arose when he was confined at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington").[2]  The majority of the plaintiff's claims concern alleged deliberate indifference to his serious medical needs.  In summary, the plaintiff alleges that staff at FMC-Lexington either failed to render prompt medical attention; failed to render any medical attention as to some of his medical needs; or rendered medical services which were inadequate and insufficient to address his problems.  The plaintiff's various medical claims fall under the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment.

The plaintiff asserts that he was required to undertake physical work at FMC-Lexington which aggravated existing back and neck problems.  He alleges that the work activities he was required to perform at FMC-Lexington violated his physician's orders that he refrain from bending, stooping, twisting and standing for prolonged periods of time.  The Court broadly construes these claims as challenges to the conditions of his confinement, which would also fall under the ambit of the Eighth Amendment of the United States Constitution.

---

[1]

The plaintiff submitted a two-inch-thick set of medical records, which the Clerk of the Court has placed in a separate record jacket.  The Clerk has not scanned these medical records.

[2]

On March 25, 2005, the plaintiff filed a notice of change on address, which notice indicates that he has been released from federal custody.

2

The plaintiff further alleges that on August 25, 2004, FMC-Lexington food service staff served a pork-based food product on the "Mainline" without posting a sign to the inmates indicating that the food contained a pork product. The plaintiff identifies the food served as being "Natural Processed Pork Casing in Eccuate Beef Polish Sausage." The plaintiff states that on that date, he did in fact unknowingly consume pork. The plaintiff alleges that because his religion, Yahweh, considers pork to be an "unclean" food and prohibits the consumption of pork as part of its religious tenets, he defiled himself by consuming a pork product. He alleges that due to "negligent and deliberate indifference" caused by FMC-Lexington staff, his First Amendment religious rights have been violated and he has suffered mental anguish and suffering as result.

Finally, with regard to the plaintiff's First Amendment religious claim stemming from his consumption of pork, the plaintiff also submitted a formal tort claim with the BOP under the FTCA. The plaintiff sought $1,000,000.00 in damages. By letter dated November 24, 2004, Matthew W. Mellady, BOP Acting Regional Counsel, denied the plaintiff's tort claim.[3] The grounds for the denial of the claim were that based upon the answers which the plaintiff gave in response to a "Religious Diet Interview" form, he was "approved to participate in the mainline component of the Religious Diet Program, which included access to the Salad/hot bar." [Mellady Letter, Record No. 1]

### NAMED DEFENDANTS

The plaintiff names the following individuals as defendants: (1) Joe Booker, Warden of FMC-Lexington; (2) Dr. Dankwa, physician at FMC-Lexington; (3) an individual the plaintiff identifies only as "Sipe, Supervisor"; (4) "Ms. Rivers," whom the plaintiff identifies as a " Medical

---

[3] The plaintiff did not provide the Court with a copy of his actual FTCA Administrative Claim.

Assistant Adm."; (5) "Mr. Beasley," whom the plaintiff identifies as Food Administrator of FMC-Lexington; and (6) "Cardwell," whom the plaintiff identifies as Chaplain of FMC-Lexington.

<u>RELIEF REQUESTED</u>

The plaintiff seeks compensatory damages in the amount of $2,500.00 and punitive damages in the amount of $2,000,000.00. He also seeks the appointment of counsel and trial by jury.

<u>DISCUSSION</u>
A. <u>Eighth Amendment Medical and/or Conditions of
Confinement Claims</u>

The plaintiff alleges that on numerous occasions, the staff at FMC-Lexington either denied him medical care or rendered medical treatment which was delayed and/or inadequate. The plaintiff fails to provide specific information as to some of his Eighth Amendment claims, such as the dates of the alleged constitutional violations. The plaintiff asserts seven separate Eighth Amendment claims.

1. <u>August 22, 2003 Medical Claim</u>

The plaintiff alleges that on August 22, 2003, he requested the Medical Clinic at FMC-Lexington to provide him with emergency medication for his asthma condition. The plaintiff alleges that the response to his request was a reply dated August 25, 2003, stating that the request had been forwarded to the plaintiff's primary care physician. The plaintiff alleges that had it not been for the fact that he was able to "compose himself," this delay could have killed him. [Complaint, p. 2] The Court must dismiss this claim for two reasons.

a. <u>Failure to Exhaust</u>

First, to the extent that the plaintiff is unhappy about the alleged delay in medical treatment, he has not demonstrated that he has attempted to exhaust this Eighth Amendment *Bivens* claims

4

through the BOP administrative remedy channels. The Prison Litigation Reform Act ("PLRA"), 42

U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions

and any other incident to prison life, such as excessive force, to exhaust all available administrative

remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Lavista

v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL

1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter)

(inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on

inadequate conditions of confinement, citing *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819

(2001)).

The PLRA reads as follows:

> No action shall be brought with respect to prison conditions under §1983 of this title,
> or any other Federal law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as are available are exhausted.

The administrative remedies available to inmates confined in BOP institutions are set out in

28 C.F.R. §542.10-.19 (1998). Section 542.13(a) demands that an inmate first informally present

his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the

problem, before filing a request for an administrative remedy. If the inmate cannot informally

resolve his complaint, then he may file a formal written request to the Warden [BP-9]. If the inmate

is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and,

if not satisfied with the Regional Director's response, the inmate may appeal that decision to the

Office of General Counsel [BP-11]. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an

appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and

General Counsel, 40 days. The agency is permitted only one extension of time of 20-30 days, in writing. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

The plaintiff has failed to establish that he pursued any of the administrative remedies with regard to this claim. Having failed to demonstrate that he exhausted this claim as prescribed by the applicable federal regulations, the Court is required to dismiss it, as premature, without prejudice. Furthermore, while it appears from the record that the plaintiff is no longer confined and may have been released from prison, his recent change in status does not excuse his obligation to have fully exhausted all of his *Bivens* constitutional claims through the BOP's administrative remedy procedures while he was confined. *See Cox v. Mayer*, 332 F.3d 422 (6th Cir. 2003).

In *Cox*, the plaintiff had been released from prison, and was no longer a prisoner, when the district court considered the defendant's motion to dismiss the plaintiff's §1983 action, against a prison physician, for failure to exhaust. The court addressed the issue of whether the district court properly dismissed the action where the prisoner had not exhausted his administrative remedies before filing suit, as is required under PLRA. The plaintiff had argued that his release from confinement excused compliance with the exhaustion requirement.

The Sixth Circuit disagreed, holding that the PLRA's administrative exhaustion requirement was not excused by the fact that when a motion to dismiss for failure to exhaust was decided, the inmate had been released and thus could immediately re-file. *Id.* at 424-25. The court rationalized that "to excuse plaintiff's duty to exhaust in every instance would encourage all prisoners nearing completion of their sentences to eschew the grievance process in favor of the courts. Such prisoners would know that, no longer confined at the time the courts addressed their case, their failure to

6

exhaust could be excused." *Id.* at 427.

In the instant case, the plaintiff was confined at FMC-Lexington at the time of the complained-of actions in 2003. It appears that the plaintiff may have been released from custody around March, 2005 [*See* Record No. 6]. The documents attached to the complaint reflect that the plaintiff was confined at FMC-Lexington as recently as November 24, 2004, the date the BOP denied the plaintiff's FTCA claims. Accordingly, the plaintiff was required to have exhausted his *Bivens* claims through all steps of the BOP's administrative remedy procedure. His current status as a *former* prisoner does not relieve him of his prior duty to have exhausted his claims.

### B. Statute of Limitations

Second, even assuming *arguendo* that the plaintiff had demonstrated exhaustion of this claim, the Court would have to dismiss it with prejudice for another reason. The plaintiff did not file the instant *Bivens* complaint until February 8, 2005, almost a year-and-a-half after the complained-of action of August 22, 2003. Kentucky's one-year statute of limitations found in Ky. Rev. Stat. Ann. §413.140(1)(a) applies to civil rights claims arising in Kentucky. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990).

The law in this circuit is well settled that *Bivens* claims have a one-year statute of limitations under Kentucky law, *see Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *McSurely v. Hutchison*, 823 F.2d 1002 (6th Cir.1987). Accordingly, the Court must dismiss the plaintiff's First and Fifth Amendment *Bivens* claims against the "unknown" BOP defendants employed at FMC-Lexington. *See also Garzon v. Luttrell*, 24 Fed.Appx. 400, 401, 2001 WL 1563607, **1 (6th Cir. (Ky)) (Not selected for publication in the Federal Reporter) (district court properly found that Garzon's *Bivens* action was time-barred under Ky. Rev. Stat. Ann. §413.140(1)(a)).

7

Although a prisoner must first exhaust his available administrative remedies under the PLRA before filing suit in federal court challenging prison conditions, if a claim is, on its face, frivolous or fails to state a claim upon which relief can be granted, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies. *Paige v. Pandya*, 238 F.3d 423, 2000 WL 1828653, **1 (6th Cir. (Mich.)) (Unpublished opinion) (citing 42 U.S.C. §1997e(c)(2) and *Brown v. Toombs*, 139 F.3d 1102, 1103-04 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998).

"A complaint does not present a rational basis in law if it is time-barred by the appropriate statute of limitations. When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir.1995); *see also McGore [v. Wrigglesworth]*, 114 F.3d at 609." *Paige v. Pandya*, 2000 WL 1828653 at **1.

A district court may *sua sponte* raise the statute of limitations defense in a suit where statute of limitations defect was obvious from face of complaint. 28 U.S.C.A. §§1915(e)(2). *See Alston v. Tennessee Dept. of Corrections*, 28 Fed.Appx. 475, 2002 WL 123688 (6th Cir.(Tenn.)) (*Sua sponte* dismissal of state prisoner's §1983 complaint against prison officials was warranted). The instant plaintiff's claims alleged to have arisen on August 22, 2003, are clearly barred by the Kentucky statute of limitations, KRS §413.140(1)(a), and must be dismissed with prejudice.

### 2. October 8, 2003 Medical Claim: Remedy No. 314648

The plaintiff alleges that he saw Dr. Dankwa, a physician at FMC-Lexington, on October 8, 2003, concerning numerous medical ailments consisting of unspecified car accident injuries, asthma, mental health issues, depression, neck and back pain, finger injuries, and substance abuse disorders. The plaintiff alleges that Dr. Dankwa increased the dosage of his Zoloft prescription without his

psychiatrist's consent, thus exposing him to "danger and high risk." [Complaint, p. 3]

It appears that the plaintiff made some effort to administratively exhaust this claim. On October 24, 2003, he filed a BP-9, which the Warden denied on November 17, 2003. In his BP-9, he complained not only about Dr. Dankwa's increase in the medication dosage, but also about: (1) Dr. Dankwa's alleged delay in treating him, and (2) Dr. Dankwa's requiring him to participate in work programs which the plaintiff contends were beyond his physical capabilities.

In his response and denial of the BP-9, the warden noted that the plaintiff had undergone a Magnetic Resonance Imaging ("MRI") test in 1999 and had received consistent medical attention since his arrival at FMC-Lexington on August 21, 2003, including having had spinal x-rays taken on September 4, 2003. The warden further stated that the plaintiff had been assigned work duties, with several restrictions, which enabled him to stay active without subjecting him to the physical exertions "on the outside." [Record No. 1, BP-9 Response to Administrative Remedy, 11/17/03]

The warden concluded that because the plaintiff's conditions had been present for many years prior, and because he had been transferred to FMC-Lexington for General Population "with no identified needs for continued medical treatment," the plaintiff had set forth no basis entitling his request for an administrative remedy [*Id.*] The warden denied all claims set forth in the plaintiff's "Request for Administrative Remedy" stemming from the October 8, 2003 episode.

The attachments to the complaint reflect that the plaintiff pursued all administrative remedy levels through and including the BOP's Central Office, which rejected the plaintiff's appeal on February 17, 2004. The BOP advised the plaintiff by "Rejection Notice" that he had: (1) failed to submit the proper number of continuation pages with his BP-11 appeal, and (2) failed to submit the correct number of attachments, which the Central Office described as "new documentation not

9

considered by lower levels." The Rejection Notice informed the plaintiff that he would have fifteen (15) days from February 17, 2004, in which to resubmit his BP-11 appeal in proper form.

The plaintiff has not attached any documentation indicating that he resubmitted his BP-11 appeal in proper form within the fifteen-day extension, or, for that matter, at any time thereafter. In *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L. Ed.2d 1 (1999), the Supreme Court stated that "we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848, 119 S.Ct. 1728 (emphasis in original). The plaintiff does not allege that an extension was sought or granted by the BOP, under 28 C.F.R. §542.14(b). Thus, the plaintiff has not completed the final level of the exhaustion process.

Based on the facts, the plaintiff has failed to *properly* exhaust the medical claims alleged to have arisen on October 8, 2003, and his time for doing so has expired. Accordingly, the plaintiff has failed to fully complete the administrative remedy process as to any claims alleged to have arisen on October 8, 2003, and these claims are dismissed without prejudice.[4]

### 3. September 15, 2003 Medical Claim

The plaintiff next complains when he saw Dr. Dankwa on September 15, 2003, she referred him to physical therapy without providing him with the appropriate Referral Form. The plaintiff alleges few other details about this claim, other than to generally reiterate that he was unhappy about the level of medical assistance he received at FMC-Lexington. He states that on September 18, 2003, he wrote a letter of complaint to the United States District Court for the Western District of Kentucky in Louisville, Kentucky. The attachments indicate that John D. Fulner, a United States

---

[4]

The Court would note that it is highly likely that this claim is now time-barred, given the plaintiff's failure to properly complete the final step of the administrative exhaustion process.

Probation Officer in Louisville, replied by letter dated October 7, 2003, that the medical staff at FMC-Lexington was responsible for evaluating and addressing the plaintiff's medical claims.

The Court concludes that dismissal is appropriate.   The plaintiff has again failed to demonstrate *any* compliance with the administrative remedy process regarding a claim alleged to have arisen on this date.[5]  Writing a letter to the District Court in Louisville, Kentucky, does not qualify as compliance with the administrative remedy process set forth in 28 C.F.R. §§542.10-.19. Additionally, as the alleged claim occurred on September 15, 2003, and the complaint was not filed until almost a year-and-a-half later, Kentucky's one-year statute of limitations for *Bivens* actions would also preclude any recovery on this claim.  This claim is dismissed with prejudice.

### 4. November 5, 2003 Condition of Confinement/Medical Claim

The plaintiff alleges that on November 5, 2003, while standing near a construction site in the third floor of the Blue Grass Unit at FMC-Lexington, he "observed and inhaled some dusty particles that appeared to be asbestos." [Complaint, p. 3]  He alleges that he "lodged a complaint to safety to ensure that his safety/medical condition and to seek further precautions. . . ." [*Id.*, pp. 3-4].

This claim must be dismissed for several reasons.  First, the plaintiff has again failed to establish that he administratively exhausted this claim pursuant to the procedures set forth in 28 C.F.R. §542.10-.19.  Second, given the absence of any exhaustion, the claim would be barred by

---

[5]

The plaintiff did provide the Court with a copy of a BP-8 "Inmate Request to Staff"dated November 26, 2003, concerning physical therapy issues. The plaintiff complained in that BP-8 that he was improperly being denied physical therapy services. He did not mention Dr. Dankwa's alleged failure to supply physical therapy referral forms, or any events having occurred on September 15, 2003. On December 1, 2003, David Nestor, PT ECS, denied the BP-8 on the grounds that either a doctor or a physician's assistant had to refer an inmate to physical therapy. He recommended that the plaintiff discuss his physical therapy needs with a doctor or a physician's assistant. The plaintiff provided the Court with no documentation indicating that he exhausted his November 26, 2003 claim any further.

11

Kentucky statute of limitations, KRS §413.140(1)(a). Third, the plaintiff's claims are speculative, because he alleges no actual injury as a result of the alleged exposure to the asbestos-like substance.

A court must have an actual, existing controversy before it. To satisfy Article III's standing requirements, a plaintiff must show that he: "(1) has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L. Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 523-24 (6th Cir. 2001). The instant plaintiff's allegations of possible injury are based on pure conjecture, not existing facts. The claim relating to the alleged inhalation of dust particles is therefore dismissed without prejudice.

### 5. Failure to Train Personnel

The plaintiff alleges that Warden Joe Booker either failed to train staff members or failed to ensure that FMC-Lexington staff members received proper medical training, which training would have enabled them to assist injured inmates. He further alleges that Dr. Dankwa and Mrs. Sheppard, whom he describes only as "teacher at FMC-Lexington," failed to provide him with adequate medical care and/or required him to engage in physical activities which exceeded his physical abilities. He also alleges that the BOP generally failed to implement policies which would have prevented him from being denied proper medical care. [Complaint, pp. 6-7]

The Court again concludes that the instant plaintiff failed to properly submit these general grievances through the BOP's administrative remedy process. The plaintiff supplied the Court with

evidence of only partial administrative exhaustion of certain medical claims.

### a. Remedy No. 342304

The only documentation relating to this remedy is a "Receipt - Administrative Remedy" prepared by the BOP's Mid-Atlantic Regional Office on August 13, 2004. The receipt indicated the plaintiff had alleged "Medical care-Delay or Access To" in a BP-10 appeal received on August 11, 2004.[6] As the plaintiff provided the Court with no documents reflecting either his prior or subsequent efforts to exhaust this claim, the Court concludes that the plaintiff failed to fully and properly exhaust this claim. The Court dismisses this claim without prejudice.

### b. Unidentified Remedy

The second claim is evidenced only by a "Response to Inmate Correspondence" which the warden of FMC-Lexington prepared on September 9, 2004.[7] The warden responded that the plaintiff had been afforded numerous medical services, including medical examinations, physical therapy, nerve conduction studies, medication, x-rays, appropriate work restrictions, and the testing of his cholesterol and glucose levels. The warden determined that based upon the plaintiff's history, he was not disabled and should in fact continue with his daily activities. There is no evidence in the material submitted that the plaintiff exhausted, or attempted to exhaust, this claim at any other level.

### c. Remedy No. 320953

The plaintiff only partially exhausted this medical claim, in which he complained of being denied appropriate medical care for a sinus and chest infection and "neck pain" when he reported

---

[6] The plaintiff did not attach to his complaint his BP-10 Appeal to the Mid-Atlantic Regional Office.

[7]

The Court was unable to locate the plaintiff's initial letter of August 31, 2004, to which the warden was responding. The plaintiff had apparently complained that FMC-Lexington medical staff had either neglected or failed to properly treat his numerous medical conditions.

13

to sick call on December 1, 2003, and December 12, 2003. The plaintiff submitted a BP-9 "Request for Administrative Remedy" on December 17, 2003.

The warden denied this claim on February 4, 2004, noting that the medical records indicated that the plaintiff did not seek medical attention for cold/cough symptoms until January 21, 2004, at which time no evidence of pneumonia was found. He further noted that the physician prescribed the plaintiff an expectorant and a metered dose inhaler of a bronchodilator; found that the symptoms were typical of post-viral bronchitis; and advised the plaintiff to quit smoking. As the plaintiff did not provide the Court with any documentation indicating that he filed a BP-10 appeal or a BP-11 appeal, the Court concludes that he plaintiff did not fully exhaust his claims relating either to alleged delay in medical treatment, or alleged inadequate medical treatment on December 1 and 12, 2003.[8]

In summary, there is no evidence that the plaintiff exhausted claims that the BOP failed to properly train medical personnel at FMC-Lexington. These claims are dismissed without prejudice.

### 6. Eye Treatment Claim

The plaintiff alleges that on March 18, 2004, he obtained medical treatment from an outside eye specialist. The plaintiff alleges that this unidentified doctor failed to give him the proper

---

[8]

The Court notes that at this late date (over a year later), the BOP would most likely deem as time-barred any effort to complete the exhaustion process of these claims. *See* 28 C.F.R. §542.15(a), which states as follows:

a) *Submission.* An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director *within 20 calendar days of the date the Warden signed the response.* An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in §542.14(b) of this part

28 C.F.R. §542.15(a) (Emphasis Added).

14

device(s) to protect his eyes when he (plaintiff) left the examination. Plaintiff further alleges that "P.A." (Presumably, "Physicians Assistant") Ryan failed to render proper follow-up medical care and simply told the plaintiff to stay in the dark. The record is devoid of any documentation indicating that the plaintiff undertook any steps to administratively exhaust his claims relating to the allegedly deficient medical treatment of his eyes. The claim is therefore before the Court prematurely, and the Court dismisses it without prejudice.

### 7. Steroid Shot to Fingers

The plaintiff alleges that on an unspecified date, he requested that Dr. Dankwa inject his two index fingers with steroid shots, but that Dr. Dankwa refused. The plaintiff contends that Dr. Dankwa failed to read his prior medical files from the Veterans Administration, which would have revealed that he (plaintiff) had previously received these shots. The record is devoid of any documentation indicating that the plaintiff undertook any steps to administratively exhaust his Eighth Amendment claim relating to Dr. Dankwa's alleged failure to administer steroid shots to his index fingers. The claim is before the Court prematurely, and it is therefore dismissed without prejudice.

### B. *Bivens* First Amendment Religious Claims

The plaintiff alleges that FMC-Lexington violated his First Amendment constitutional rights: (1) by serving him a food product containing either pork or a pork component and (2) refusing to allow him to partake of a strict Kosher diet in conformity with his Yahweh religious beliefs. It appears from the attachments to the complaint that the plaintiff filed three (3) separate administrative remedies alleging First Amendment religious violations.

### 1. Remedy No. 351729

On May 7, 2004, the plaintiff submitted both an "Informal Request to Staff" (BP-8) and an

15

"Informal Resolution Form" seeking permission to participate in a strict Kosher diet and eat "clean food.." The plaintiff alleged in the "Informal Resolution Form" that the warden's employee, Mr. Beasley, and his kitchen staff had neglected his (plaintiff's) religious beliefs when preparing the food and had essentially denied his request. The plaintiff did not provide specific allegations about Mr. Beasley's actions. Staff advised the plaintiff to contact the chaplain regarding the issue.

The plaintiff attached to his complaint a "Notification of Religious Diet Accommodation" ("NRDC"). The NRDC indicates that on September 1, 2004, the Chaplain of FMC-Lexington approved the plaintiff's participation in the "Religious Diet Program" by marking this box:

> "[Plaintiff] Approved to participate in the mainline component of Religious Diet Program which includes access to the salad/hot bar only (where the salad/hot bar is part of the Food Service Program.)"

The plaintiff may have been dissatisfied that more restrictive dietary restrictions were not imposed. Although he did not provide the Court with a copy of a BP-9 "Request for Administrative Remedy," it appears that he submitted such a request to the warden, as the record contains a document entitled "Receipt-Administrative Remedy" dated September 16, 2004. The identified subject was "RLGS Diet: Certified/Non-Flesh alternative, Access to."

The plaintiff did not attach the warden's response. It appears that the warden denied the BP-9, as the plaintiff attached a BP-10 appeal, dated October 13, 2004, to the Mid-Atlantic Regional Office ("MARO"), in which he explained that the warden had denied his BP-9 on September 29, 2004. The plaintiff asserted that because of improper notice/labeling, he had unknowingly consumed food containing a pork ingredient and had unintentionally violated his religious beliefs.

The MARO issued a receipt dated October 22, 2004. On November 18, 2004, the MARO issued an "Extension of Time for Response-Administrative Remedy," in which it extended until

16

December 17, 2004, its time for a response. The record contains no further documentation indicating what the MARO's response was, or, if it was unfavorable to the plaintiff, whether the plaintiff filed a BP-11 with the Central Office. Thus, the plaintiff has failed to demonstrate full and complete exhaustion as to these *Bivens* claims, and they must be dismissed without prejudice.

## 2. Remedy No. 348278

The plaintiff provided scarce information as to this administrative remedy, submitting only two documents. The first is a "Receipt-Administrative Remedy" dated August 20, 2004, indicating that the plaintiff filed a BP-9 which the warden received on August 19, 2004. The subject matter was identified as "Religious programs-(Except Food/Diets/Meals), Access to." The only other document concerning this remedy was the warden's September 9, 2004 "Extension of Time for Response-Administrative Remedy," in which the warden extended his response deadline until September 28, 2004. The record is devoid of not only the warden's decision, but also of any indication as to whether the plaintiff filed a BP-10 and a BP-11 appeal. The Court concludes that the plaintiff has failed to demonstrate that he properly and fully exhausted the claims raised in Administrative Remedy No. 348278. These claims are therefore dismissed without prejudice.

## 3. Remedy Number 352502

The plaintiff submitted a document from the MARO, dated October 22, 2004, entitled "Receipt-Administrative Remedy." The subject matter was identified as "RLGS Diet: Certified/Non-Flesh alternative, Access to." The receipt states that the MARO received the plaintiff's BP-10 appeal on October 18, 2004, and that the MARO's response was due on November 17, 2004. The record, however, contains neither the MARO's response nor any indication that the plaintiff filed a BP-11 appeal to the Central Office. Again, in the absence of documentation

17

verifying that all administrative exhaustion steps were taken through and including the BOP's
Central Office (BP-11), the Court must dismiss this claim, without prejudice, as premature.

C. <u>FTCA First Amendment Religious Claims</u>

The FTCA constitutes the United States' consent to be sued in tort actions "for money
damages . . . for injury or loss of property, or personal injury or death caused by the negligent or
wrongful act or omission of any employee of the government while acting within the scope of his
office or employment . . . ." 28 U.S.C. §1346(b), and it is limited to cases in which "a private
individual [would be liable] under like circumstances." 28 U.S.C. §2674. The FTCA provides the
exclusive remedy for tort actions against the federal government, its agencies and employees. *Ascot
Dinner Theatre v. Small Business Admin.*, 887 F.2d 1024, 1028 (10th Cir. 1989).

The United States is the only proper defendant to an FTCA complaint. *See Allgeier v.
United States*, 909 F.2d 869, 871 (6th Cir. 1990); *Mars v. Hanberry*, 752 F.2d 254, 255 (6th Cir.
1985). As the plaintiff has not named the United States as a party to this action, the Court is without
jurisdiction over the his FTCA claims. *Id.* at 256; *see also Nelson v. United States Postal Service*,
650 F. Supp. 411, 412-413 (W.D. Mich. 1986). The FTCA claims are dismissed without prejudice.

CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** that this action is **DISMISSED**,
*sua sponte*, and judgment shall be entered contemporaneously with this memorandum opinion in
favor of the defendants. The plaintiff's request for appointment of counsel is **DENIED** as **MOOT**.

This _____ 11 _____ day of May, 2005.

KARL S. FORESTER, SENIOR JUDGE

18